JAMES E. HEWITT *v.* ARTIE J. HEWITT

(No. 8618)

Submitted April 19, 1938. Decided May 10, 1938.

*Lloyd Arnold,* for appellant.
*Martin Brown,* for appellee.

MAXWELL, PRESIDENT:

This is an appeal by the defendant from a decree of the circuit court of Marshall County granting the plaintiff an absolute divorce from the defendant on the ground of desertion.

Plaintiff and defendant were married in 1909. Children born to their union were reared to maturity before the parties separated. The defendant left the family home March 29, 1934. She took the position that her departure was justified by alleged cruel treatment of her by her husband.

On July 25, 1935, she sued her husband in the stated court for separate maintenance, on the ground of cruel and inhuman treatment. James E. Hewitt answered her bill denying its allegations, and, on the basis of averments made by him, prayed that a divorce be granted to him because of his wife's alleged desertion. The trial court held the affirmative matters of the cross-bill answer to be insufficient and sustained a demurrer thereto. On full proof the court found against Artie J. Hewitt on the allegations of her bill and dismissed the same out of court by decree of November 12, 1935.

By legislative enactment of March 9, 1935, the period of desertion requisite for divorce from the bond of matrimony was reduced from three years to two years. The amended statute reads: "A divorce from the bond of matrimony may be decreed: (c) To the party abandoned, when either party wilfully abandons or deserts the other for two years * * * ." Acts 1935, Chapter 35, Section 4; Code 1937, 48-2-4. The demurrer was correctly sustained to the husband's cross-bill in the separate maintenance suit because at the time of the filing of the cross-bill, the statutory period of two years had not elapsed. Therefore, there is no basis for Artie J.

Hewitt's contention in the present case that the question of desertion stands *res judicata*.

From the date of the wife's alleged desertion, March 29, 1934, to the institution of this suit, August 25, 1936. there elapsed a period of two years, four months and twenty-six days. The separate maintenance suit, as stated, covered three months and seventeen days. If the period of the pendency of the maintenance suit be deducted from or carved out of the total time of the alleged desertion, there will remain two years, one month and nine days, which is more than the time required by the statute. But the query arises whether there thus may be deduction of time of pendency of the prior suit, or whether the institution of the prior suit had the effect of destroying any benefit which the party claiming to have been deserted would be entitled to because of the months of separation which had already passed. If the latter result attends, it would follow that the period of separation could be counted only from the termination of the prior suit.

Where spouses are separated and one of them in bad faith institutes suit for divorce or maintenance, the pendency of that suit has no effect on the running of the statutory desertion period in favor of the innocent party. But where bad faith is not involved, the rule is different, and is thus stated: "Where one spouse in good faith institutes suit for divorce against the other, it is a general rule that there can be no desertion by the one of the other pending the suit, though it may develop that there is no ground for divorce." *Criser* v. *Criser,* 109 W. Va. 696, 156 S. E. 84. But that settled principle does not quite reach the proposition under immediate consideration.

There is nothing in the record to indicate that the wife's separate maintenance suit was actuated through bad faith, so we must consider that, at the least, it interrupted the running of the desertion period. But, shall we merely deduct that period, or must the court hold that the counting of the time of desertion shall start

anew after the dismissal of the first suit? In the case of *Vickers* v. *Vickers,* 95 W. Va. 323, 328, 122 S. E. 279, 41 A. L. R. 266, the court, in discussing the then three-year desertion statute, said: "But the abandonment must be continuous for three full years." This broad statement applies without limitation where, after separation has continued for a time, the parties effect a reconciliation which is destroyed by the second desertion by the spouse who had initially deserted. In such situation the innocent party, having condoned the first desertion, cannot take into account the time which had elapsed during the first desertion in order that it may be included as a portion of the requisite statutory period. But the general rule is that where there has been no condonation of the initial desertion, the institution of an unsuccessful divorce or separate maintenance suit does not destroy for the abandoned party the benefit of the time which had elapsed from the date of separation to the institution of the unsuccessful suit. Numerous courts of last resort have dealt with this proposition, and have reached the conclusion here stated. *Wagner* v. *Wagner,* 39 Minn. 394, 40 N. W. 360; *Craig* v. *Craig,* 118 Va. 284, 87 S. E. 727; *Woodward* v. *Woodward,* 122 Fla. 300, 165 So. 46; *Hartpence* v. *Hartpence* (N. J. Ch.), 121 Atl. 513. These cases make it clear that where the initial suit was not in good faith, there is no suspension of the statutory desertion period; and where the suit was in good faith the extent of the interruption was merely for the time covered by the pendency of the suit.

The trial court having adjudicated in the separate maintenance suit that James E. Hewitt was not guilty of cruel and inhuman treatment of his wife, and no other justification for her conduct being established, it follows that her voluntary separation from him March 29, 1934 was unjustified and therefore constituted desertion by her of him. In the instant case she offered no testimony in her own behalf but relies merely on the showing brought out on the cross-examination of the plaintiff and his witnesses that after the separate maintenance suit

was adjudicated against her, she sought to begin again her abode in the family home, but was not permitted to do so by her husband. She does not deny the testimony of her adult daughter and of a neighbor woman that at the time the defendant was seeking to re-establish herself in the home, she stated, in effect, to them, separately, that she was coming back so as to have a home but that she would not renew with the plaintiff the relationship of his wife. Letters written by her to him indicate a wish on her part for a home and for a settlement, but are devoid of expressions of desire to resume marital relations.

The chancellor's decree granting a divorce to the husband is amply justified by the record, and must be affirmed.

*Affirmed.*